TEXAS STATE BOARD OF EXAMINERS
IN OPTOMETRY et al., Relators,

v.

Ellis CARP et al., Respondents.

No. A–10258.

Supreme Court of Texas.

Feb. 17, 1965.

Rehearing Denied April 7, 1965.

Waggoner Carr, Atty. Gen., Austin, John Reeves, Asst. Atty. Gen., Tom Gee and Will Garwood, Sp. Asst. Attys. Gen., Strasburger, Price, Kelton, Miller & Martin, Dallas, Niemann & Babb, Austin, for relators.

Douglas E. Bergman, Dallas, Quentin Keith, Keith, Mehaffy & Weber, Beaumont, Jake Jacobsen, C. K. Richards, Austin, for respondents.

STEAKLEY, Justice.

This is an original mandamus proceeding. Relators are the Texas State Board of Examiners in Optometry, and others [1]. Respondents are Honorable Dallas Blankenship, Judge of the 101st Judicial District Court of Dallas County; Ellis Carp, a licensed optometrist practicing under various assumed names, including Lee Optical, Luck Optical, One Price Optical, Douglas Optical, Plains Optical, Mesa Optical, Mast Optical; and S. J. Rogers and N. Jay Rogers, licensed optometrists practicing under the assumed name of Texas State Optical.

Relators seek the extraordinary writ to require Judge Blankenship to set aside his

1. Drs. Carl R. Cathey, Robert E. Day, John E. Finn, B. R. Friedman, Harvey McCord, M. D. Monaghan, Don Montgomery, John S. Morgan, Frank V. Swanson, Jr., Bruno Theis, O. Reynolds Young, all of Dallas County; and Thomas G. Beall, Collin County; S. C. Scarbrough, Kaufman County; and E. U. Sprinkle, Hunt County.

order declaring a mistrial in Cause No. 69,-448–E, pending in the 101st Judicial District Court of Dallas County, styled Ellis Carp et al. v. Texas State Board of Examiners in Optometry, and further commanding Judge Blankenship to enter a final and appealable judgment determining the validity or invalidity of the Professional Responsibility Rule adopted by the Board and under attack in the suit.

The Board is an administrative agency of the State of Texas created under the provisions of Article 4553, Revised Civil Statutes of Texas, 1925. It is authorized by Article 4556 "to make such rules and regulations not inconsistent with this law as may be necessary for the performance of its duties, the regulation of the practice of optometry, and the enforcement of the Optometry Act." On December 21, 1959, the Board adopted what is entitled the Professional Responsibility Rule, the relevant provisions of which are quoted in the footnote [2]. Respondents Carp and Rogers immediately attacked the

2. "In order to protect the public in the practice of optometry, better enable members of the public to fix professional responsibility, and further safeguard the doctor-patient relationship, the following rule is hereby adopted by the Texas State Board of Examiners in Optometry on the 21 day of December, 1959

"Section 1. No optometrist shall:

"a. Divide, share, split, or allocate, either directly or indirectly, any fee for optometric services or materials with any lay person, firm or corporation, provided that this rule shall not be interpreted to prevent an optometrist from paying an employee in the regular course of employment, and provided further that it shall not be construed as a violation of this rule for any optometrist to lease space from an establishment on a percentage or gross receipts basis or to sell, transfer or assign accounts receivable.

"b. Divide, share, split or allocate either directly or indirectly, any fee for optometric services or materials with another optometrist or with a physician except upon a division of service or responsibility and then only after the patient paying the fee has full knowledge thereof, provided that this rule shall not be interpreted to prevent partnerships for the practice of optometry.

"c. Practice or continue, after the elapsing of a reasonable time not to exceed one (1) year after the effective date of this rule, to practice optometry under, or use in connection with his practice of optometry, any assumed name, corporate name, trade name, or any name other than the name under which he is licensed to practice optometry in Texas; provided, however, that optometrists practicing as partners may practice under the full or last names of the partners. Optometrists who are employed by other optometrists shall practice in their own names, but may practice in an office listed under the name of the individual optometrist or partnership of optometrists by whom they are employed. In event of the death or retirement of a partner, the surviving partner or partners practicing optometry in a partnership name may, with the written permission of the retiring partner or the deceased optometrist's widow or other legal representative, as the case may be, continue to practice with the name of the deceased partner in the partnership name for a period not to exceed one (1) year from the date of his death, or during the period of administration of a deceased partner's estate as provided by Article 4563, as amended, Revised Civil Statutes of Texas, whichever period shall be the longer.

"d. Use, cause or allow to be used after the elapsing of a reasonable time not to exceed one (1) year after the effective date of this rule, his name or professional identification, as authorized by Article 4590e, as amended, Revised Civil Statutes of Texas, on or about the door, window, wall, directory, or any sign or listing whatsoever, of any office, location or place where optometry is practiced, unless said optometrist is actu-

Rule by suit in the nature of a declaratory judgment action, since which time the Board has been under successively issued court orders restraining the enforcement of the Rule.

It is necessary to describe only briefly the various proceedings and legal maneuvers of the parties preliminary to the events in court which brought about this mandamus proceeding. The suit attacking the Rule was placed on the jury docket upon the motion of Respondents Carp and Rogers. A pre-trial hearing was held on September 12, 1963, at which the Respondent Judge Blankenship overruled the motion of the Board to strike the cause from the jury docket and that the case proceed to trial before the court with the issues to be determined as matters of law under the substantial evidence rule. Parenthetically, it may be noted that at all proper times in the course of the subsequent trial the Board reasserted this position by proper motions, all of which were in turn overruled.

Trial commenced on October 21, 1963, and continued until November 13, 1963. The

ally present and practicing optometry therein during the hours such office, location or place of practice is open to the public for the practice of optometry.

"e. Practice or continue, after the elapsing of a reasonable time not to exceed one (1) year after the effective date of this rule, to practice optometry in any office, location or place of practice where any name, names or professional identification on or about the door, window, wall, directory, or any sign or listing whatsoever, or in any manner used in connection therewith, shall indicate or tend to indicate that such office, location or place of practice is owned, operated, supervised, staffed, directed or attended by any person not actually present and practicing optometry therein during the hours such office, location or place of practice is open to the public for the practice of optometry.

"f. The requirement of subparagraphs $d$ and $e$ above that an optometrist be 'actually present' in an office, location or place of practice holding his name out to the public shall be deemed satisfied if the optometrist is, as to such office, location or place of practice, either:

"(1) physically present therein more than half the total number of hours such office, location, or place of practice is open to the public for the practice of optometry during each calendar month for at least nine months in each calendar year; or

"(2) physically present in such office, location, or place of practice for at least one-half of the time such person conducts, directs, or supervises any practice of optometry. Provided that this rule shall not be interpreted as requiring the physical presence of a person who is ill, injured, or otherwise incapacitated temporarily:

The requirement of subparagraphs $d$ and $e$ above that an optometrist be 'practicing optometry' at an office, location, or place of practice holding his name out to the public shall be deemed satisfied if the optometrist regularly makes personal examination at such office, location or place of practice of the eyes of some of the persons prescribed for therein or regularly supervises or directs in person at such office, location or place of practice such examinations.

"Section 2. The willful or repeated failure or refusal of an optometrist to comply with any of the provisions of Section 1 above shall be considered by the Texas State Board of Examiners in Optometry to constitute prima facie evidence that such optometrist is guilty of violation of Chapter 10, Title 71, as amended, of the Revised Civil Statutes of Texas, and shall be sufficient ground for the filing of charges to cancel, revoke or suspend his license. The charges shall state the specific instance or instances in which it is alleged that the rule was not complied with. Alternatively, or in addition to the above, it shall be the duty of the Board to institute and prosecute an action in a court of competent jurisdiction to restrain or enjoining the violation of any of the preceding rules."

court submitted twelve special issues to the jury inquiring, in brief, if the members of the Texas Optometric Association, Inc. entered into a conspiracy with a majority of the members of the Board to use powers of the Board to prohibit the practice of optometry under trade or assumed names and multiple offices; if enforcement of the Professional Responsibility Rule resulted in the stifling of competition in the practice of optometry; if the persons conspiring, if such were found, did so for the purpose of stifling competition in the practice of optometry between Relators and Respondents; if enforcement of the Professional Responsibility Rule would increase the cost of spectacles; if the persons conspiring, if such were found, did so for the purpose of increasing the cost of spectacles; if the Relator Board acted arbitrarily in adopting the Rule; if enforcement of the Rule will lessen competition; if the Rule was necessary in the regulation of the practice of optometry by the Board; if the Board was not acting in good faith for the purpose of regulating the practice of optometry in adopting the Rule; if there were no reasonable relationship to the protection of the public health and welfare of the citizens of Texas; and if in the adoption of the Rule the Board followed the procedure set out in its "rule-making procedure rule."

After lengthy deliberation the jury announced in open court that it was unable to agree on answers to any of the issues. The jury was discharged on November 13, 1963, and on November 14, 1963, the Relators filed a motion for the court to proceed to judgment and to the entry of judgment. On May 25, 1964, Judge Blankenship overruled this motion of Relators and declared a mistrial. This mandamus proceeding resulted.

Respondents present two points. They are, first, that "The writ should be denied because of the failure of the Relators to seek substantially the same relief in the Court of Civil Appeals."; and, second, "Granting the validity of the Rule is to be determined as a question of law, the Trial Court has authority to determine from a preponderance of the evidence the issue of conspiracy in restraint of trade."

Respondents Carp and Rogers variously assert they "injected a fact issue of 'conspiracy' in the declaratory judgment proceeding, and in so doing raised the issue that acts of an official not lawfully authorized are not acts of the State."; that "the Rule was not adopted in good faith for the purpose of protecting the public health and well-being, but upon the contrary as a result of a conspiracy between the individual Board members (who were also members of Texas Optometric Association) and the other members of TOA for the purpose of destroying competition then being experienced by such conspirators."; "that the rule was the product of the conspiracy, and was therefore invalid."

The allegations of these Respondents upon which the foregoing rest are copied in the footnote.[3]

3. "Your Plaintiffs now allege that said 'Professional Responsibility Rule' was not adopted in good faith by the said Defendant Board for the purpose of protecting the health and well-being of the citizens of the State of Texas, but, on the contrary, was adopted by the Defendant Board (your Plaintiff, N. Jay Rogers, dissenting therefrom) for the avowed purpose of injuring your Plaintiffs and all other optometrists similarly situated in the State of Texas by so limiting and reducing, if not destroying, the practice of your Plaintiffs as competitors of the members of the Texas Optometric Association, Inc., of which all but one of the members of the said Board is also a member. In this connection your Plaintiffs now allege that said 'Professional Responsibility Rule' was not adopted in good faith for the purpose of regulating the practice of optometry, but for the sole and avowed purpose of destroying competition between the individual members of the said Board and those whom they represent as members of the Texas Optometric Association, Inc., and your Plaintiffs and other licensed optometrists similarly situated.

"Plaintiffs further show unto the Court that the said Board, and the individual members thereof, save and except N.

The issue in the suit in the district court is the validity of the Professional Responsibility Rule promulgated by the Board. The issues in this mandamus proceeding are whether the determination of such issue in the district court presents only questions of law, and, if so, whether this Court should direct the district court—Respondent Judge Blankenship—to proceed to judgment, either sustaining or invalidating the Rule upon the basis of the trial record made before him.

■■■ It was recognized long ago that in reviewing acts of administrative agencies the courts are not to investigate the methods they adopt or the motives or purposes which prompt their action. Railroad Commission of Texas v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573, 580 (1912). The legal effect of the administrative act upon the parties affected is the judicial inquiry. Railroad Commission of Texas v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967 (1937). Where, as here, the administrative action is quasi-legislative in nature, and apart from the question of corruption in its inception, its review by the judiciary is constitutionally limited to a determination of questions

Jay Rogers, have in the past been guilty of participating in fictitious and collusive lawsuits wherein said Board would undertake to co-operate with a willing plaintiff in an ostensible test of the rules promulgated by the said Board, and Plaintiffs now show unto the Court that the Defendants, their agents, servants, attorneys and employees, have filed numerous lawsuits in connection with the rules heretofore promulgated by the Board, which such suits were to all intents and purposes fictitious in that same were not arms-length litigation in which the validity of such rules in controversy were bona fide and legitimately debated and argued before the respective Courts; that such Defendants have conspired in the filing of such suits with fellow members of the said Texas Optometric Association, Inc., to bring such suits against the Board; and the same have been tried upon agreed Statements of Fact prepared by the attorney for the Board, and with both parties desiring a favorable ruling on the validity of the respective rules involved, thus circumventing a full and open hearing on such matters between parties bona fide contesting the power and authority of the Texas State Board of Examiners in Optometry so to enact such rules; that such actions on the part of the Defendants effectively prevent Plaintiffs and others similarly situated from appearing and contesting such action on the part of the Defendants and effectively deprive Intervenors of their day in Court and the protection of their property rights and, consequently and by virtue of such acts, does not constitute due process of law and is in violation of Plaintiffs' constitutional rights, in that such controlled litigation is unknown to them until same reaches the Appellate Courts of this State on a Record and Statement of Facts which have been agreed upon between the co-conspirators; And, by reason of the foregoing facts alleged under oath, the District Court of Dallas County, Texas, in the exercise of its equity power and jurisdiction has temporarily restrained and enjoined said Defendants from so conspiring in the future.

"Plaintiffs now allege that it was the avowed purpose of the individuals composing the Texas State Board of Examiners in Optometry (exclusive of your petitioner N. Jay Rogers, who voted against the adoption of the 'Professional Responsibility Rule'), to adopt the same so as to eliminate competition which the members of the Texas Optometric Association, Inc., and the said individuals composing said Board, individually and not as officials, were experiencing in their practice; that said rule was not promulgated in good faith for the purpose of protecting the public (for it does not accomplish such purpose) but was adopted with the ulterior and invidious motive of using their public office for private gain through the destruction of their competition.

"Your Plaintiffs now allege that the adoption of the 'Professional Responsibility Rule' was done by a majority of said Board after it had been pointed out to said Board that the effect of the adoption of such rule would be tantamount to the destruction of the practice of your Plaintiffs; Nevertheless, the said individual board members, purporting to act in their official capacity, but motivated solely by their own selfish interests and the selfish interests and desires of the Texas Optometric Association, Inc., proceeded with the adoption thereof."

of law, i. e., whether the action is within the powers delegated to the agency and, if so, whether the action is arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence. Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957); Hawkins v. Texas Co., 146 Tex. 511, 209 S.W.2d 338 (1948); Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946); Thomas v. Stanolind Oil & Gas Co., 145 Tex. 270, 198 S.W.2d 420 (1946).

■ Respondents appear to acknowledge the foregoing by their statement in their Point No. 2 that "granting the validity of the Rule is to be determined as a question of law * * *." What Respondents seek to assert is an additional type of attack against the order here, namely, that it is the product of a conspiracy in restraint of trade as to which there are fact questions to be decided by the preponderance of evidence standard. This Court in Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957), in which three similar rules of general application promulgated by the Optometry Board were likewise under attack, recognized that broad regulatory powers, many of which are discretionary in nature, are delegated to the Board.[4] We said of that controversy:

"It is not inaccurate to describe this as a dispute between two groups of optometrists, one of which emphasizes the merchandising factor of the profession or occupation and contends that the cost of suitable glasses for the using public may be greatly reduced by eliminating numerous unnecessary steps and practices which are insisted upon by the opposing group who regard such procedures and regulations as necessary to safeguard the public health. To our minds this basic conflict in Texas has been resolved by the Legislature and the optometrists themselves in favor of the group favoring strict regulation essentially by the profession itself."

We also said:

"Optometry has been classified by the Legislature as a profession and as such subject to a degree of self-regulation. As is the case of most professions, a certain proportion, generally a majority group, in a sense do tell the other members of the profession 'how to run their business.' This is a necessary adjunct or burden of regulation which the Legislature has deemed necessary to prescribe in order to safeguard the public health and welfare."

■ That a similar professional dispute is here involved is evident from the allegations of Respondents Carp and Rogers in their suit attacking the Professional Responsibility Rule.[5] Article 4553

---

4. Respondent Carp intervened in Kee v. Baber attacking the rules there considered on the basis of similar allegations of conspiracy; however, the issue drawn thereby was put aside by stipulations of the parties.

5. "Plaintiffs allege that there are several hundred optometrists practicing in the State of Texas and that through the years said optometrists have generally divided themselves into two groups, although each member of both groups is duly licensed to practice under the laws of the State of Texas. One of said groups is composed of those persons who have banded themselves together under the name of 'Texas Optometric Association, Inc.,' a corporation. The members of said corporate association are generally single practitioners who do not practice under a trade or assumed name and who ordinarily do not operate more than one optometric establishment. This group, acting through its corporate association, as aforesaid, had generally assumed to speak for all of the optometrists licensed to practice in the State of Texas, whether members or non-members of said association. On the other hand, there is a large group of licensed optometrists who have adopted a different approach to the practice of optometry and engage in the practice thereof under trade or assumed names and in multiple offices or establishments. During the past decade there has been a great deal of litigation within the State of Texas between members of the two opposed groups (all parties hereby being thor-

requires that members of the Board "shall possess the necessary qualifications to practice optometry." Those appointed to serve on the Board, as is true of all administrative agencies, necessarily bring their individual professional viewpoints with them. These may or may not be shared by either a majority of the Board, or by a majority of the profession itself. But the members of the Board having the same professional objectives will necessarily join together in acting upon rules and regulations to govern the profession, and those in the majority will prevail. The views thereby translated into governing regulations will coincide with the views of others, and perhaps a majority, of the profession. But this is not unlawful conspiracy; it is neither unlawful in itself nor is it the accomplishment of a lawful objective by unlawful means. Cf. State v. Standard Oil Co., 130 Tex. 313, 107 S.W.2d 550 (1937). The invalidation of an administrative order apart from, and regardless of, its validity as a matter of law when measured by the standard of the substantial evidence rule requires a showing of circumstances under which it would be shocking to the judicial conscience to permit the order to stand. This requires, in turn, a showing of conditions comparable in seriousness to corruption, fraud, dishonesty or bribery in the promulgation of the administrative order. This is not alleged here, and there is no contention that such is shown by the evidence in the trial of the case. It is in the public interest that orders of administrative agencies shall not stand when they are the product of sinister acts and deeds which shock the judicial conscience. But fearless administration is also in the public interest, and this is strengthened when administrative agencies are given protection against harassment or intimidation by suits which do not meet the test we have indicated.[6]

The issues submitted to the jury in this case, previously reviewed in the forepart of this opinion, illustrate the foregoing. An affirmative answer to all of the issues would not afford a basis for its invalidation, assuming the validity of the Rule when subjected to the substantial evidence standard. If the Rule was enacted

---

oughly and completely familiar with each specific piece of litigation), and the practitioners who belong to the 'Texas Optometric Association, Inc.,' have been successful, generally, in procuring the appointment to the Defendant Board of a majority of persons who are members of said 'Association' and who have endeavored by reason of their official position to accomplish the ultimate objects of said private association. Throughout the years said 'Association' has, through the agency of the Board, constantly sought to adopt rules or procure passage of legislation which would prevent the practice of optometry under trade or assumed names or in multiple establishments. Being unsuccessful in procuring the passage of legislation, said members of said 'Association' who have become members of the Defendant Board have, under the guise of the adoption of official rules and regulations, including the 'Professional Responsibility Rule,' attempted to outlaw the practice of optometry under trade or assumed names and in multiple establishments, notwithstanding the fact that such is and was and will continue to be, until the Legislature acts to the contrary, a lawful method and means of practice. As an example of the activities of the said Board, acting ostensibly as the Texas State Board of Examiners in Optometry, but in truth and in fact as a tool and agency of the Texas Optometric Association, Inc., purported to adopt on or about December 21, 1959, the so-called 'Professional Responsibility Rule,' purporting to govern the practice of optometry in the State of Texas. Your Plaintiffs attach hereto and incorporate herein by reference said Rule, as fully as if set out herein in haec verba, but in so doing your Plaintiffs do not admit the validity of said 'Professional Responsibility Rule' or any part thereof."

6. Compare the reasoning supporting the rule of federal and state jurisdictions that public officials are immune from tort liability even when it is alleged that they acted maliciously, See Sanders State Bank v. Hawkins, 142 S.W. 84 (Tex.Civ. App.1911); Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); Gregoire v. Biddle, 177 F.2d 579 (2nd Cir.1949); Davis, Administrative Law Treatise, Ch. 26, §§ 26.01 et seq.

within the powers vested in the Board by the Legislature, and if reasonably supported by substantial evidence, there can be no unlawful conspiracy in the fact, if it be a fact, that a majority of the Relator Board joined in promulgating the Rule, and in using the powers of the Board to prohibit the practice of optometry under trade or assumed names and by means of multiple offices. Nor is the Rule rendered unlawful because it will lessen competition and increase the cost of spectacles. The Board cannot have acted arbitrarily if it acted within its powers and if its action is reasonably supported by substantial evidence. Its motives are not the subject of judicial inquiry. The question of whether or not there is a reasonable relationship in the promulgation of the Rule to the protection of the public health and welfare of the citizens of Texas is one of law, i. e., whether or not the Board exceeded its statutory powers in promulgating the Rule.

 This charts the proper trial course of the suit to which this proceeding relates. The attack by Respondents Carp and Rogers upon the Professional Responsibility Rule involved only questions of law. Article 1734, Vernon's Annotated Texas Statutes, authorizes this Court to issue the writ of mandamus " * * * to compel a judge of the district court to proceed to trial and judgment in a cause agreeably to the principles and usages of law * * *" In point by analogy are the decisions that the writ of mandamus is available to compel the rendition of a judgment by the trial court upon a special issue verdict, as well as a general verdict. Lloyd v. Brinck, 35 Tex. 1 (1872); Gulf, C. & S. F. Ry. Co. v. Canty, 115 Tex. 537, 285 S.W. 296 (1926); Cortimeglia v. Davis, 116 Tex. 412, 292 S.W. 875 (1927); Southland Greyhound Lines, Inc. v. Richardson, 126 Tex. 118, 86 S.W.2d 731 (1935). In these cases the action taken by the trial court involved a determination of whether there was conflict in the findings of the jury with respect to any fact essential to the rendition of a final judgment. This determination was not regarded as an exercise of a judicial function by the trial court such as would defeat the writ of mandamus. It was stated in Cortimeglia and reiterated in Southland Greyhound Lines, Inc.:

> " 'The judge of the court, however, has no arbitrary right to refuse to enter judgment on a verdict which constitutes a finding on all the facts tendered in the pleadings necessary to the rendition of judgment. And, when it appears from the verdict itself and the order refusing to render and enter judgment thereon that such refusal is arbitrary and not based on the exercise of discretion, mandamus will lie to require entry of judgment. In such case the action of the judge is in effect a refusal to proceed to judgment in the trial of the cause.' "

So it is here. The case has been fully developed in the trial court and is ripe for judgment. The trial judge was mistaken in his belief that answers by the jury to the special issues which he submitted were essential to a rendition of judgment, just as in an occasional case a trial judge may be mistaken in his belief that there is conflict in the jury findings. In such instances a judgment should be rendered, and such action may be compelled by mandamus. The writ in no way controls the judicial discretion of the Respondent judge. It does not direct that he enter a particular judgment for a certain party but only that he proceed to judgment.[7] The circumstance that the jurisdiction of the Court of Civil Appeals was not first invoked does not defeat the jurisdiction of this Court. State v. Ferguson, 133 Tex. 60, 125 S.W.2d 272 (1939); Hidalgo County Water Improve-

---

7. Compare the cases where the entry of judgment on the pleadings or upon a motion for instructed verdict is sought to be compelled. Yantis v. McCallum, 121 S.W. 2d 610 (Tex.Civ.App.1938, original proceeding); American Bottling Company v. Briggs, 232 S.W.2d 103 (Tex.Civ.App. 1950, original proceeding).

ment District No. 2 v. Blalock, 157 Tex. 206, 301 S.W.2d 593 (1957); See also Yett v. Cook, 115 Tex. 175, 268 S.W. 715 (1925).

We express no opinion by inference or otherwise upon the question of whether the action of the Board in promulgating the Professional Responsibility Rule was beyond the powers delegated to the Relator Board or was arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence. These are questions of law to be initially determined by the Respondent trial judge and are not before us in this mandamus proceeding.

We are confident that the Respondent trial judge will proceed in accordance with this opinion without the necessity for an actual issuance of the writ of mandamus.

SMITH, J., dissenting.

POPE, J., not sitting.

SMITH, Justice (dissenting).

I respectfully dissent. The Court has, in effect, held that the Respondents failed to plead in the trial court facts sufficient to show that the individual members of the Board entered into a conspiracy for the purpose of destroying competition between the individual members of the Board and those whom they represent as members of the Texas Optometric Association and the Respondents. My position, simply stated, is this: If the pleadings alleged, and there was some evidence to support an allegation that the Professional Responsibility Rule under attack was not enacted in good faith for the purpose of protecting the public health and well-being, but was the result of an actionable conspiracy entered into between the individual members of the Texas State Board of Examiners in Optometry, or if such issue or issues were tried by consent, the trial judge's action in submitting the issues of conspiracy to a jury for determination was in the exercise of his judicial discretion, and this Court is without authority,

in mandamus proceedings, to control the exercise of such discretion.

This is not a proceeding brought solely to test the validity of the rule, but the question is whether the pleadings and the evidence raise issues of fact to be submitted to the trier of the facts in a trial de novo, to be determined by a preponderance of the evidence rather than the substantal evidence rule. In this connection, it should be stressed that the validity or invalidity of the rule is not before this Court.

In my opinion the legal effect of the pleadings was to charge that the individual members of the Board had entered into a conspiracy, which is an actionable conspiracy under the anti-trust laws of the State. These acts, if committed, were unlawful acts of officials, hence not acts of the State. Therefore, the issue was properly tried under the preponderance of the evidence rule. See Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837 (1945).

In discussing or relating the allegations of fact contained in the pleadings of both the Relators and the Respondents, I wish to make it clear that my comments are in no way to be construed as an expression of an opinion as to how the trier of the fact issues, whether raised by the pleadings and the evidence or tried by consent, should answer the issues.

The pleadings are voluminous and the statement of facts consists of some three thousand pages. I have read the pleadings but not the statement of facts, therefore, I do not propose to second guess the trial court as to the evidence but rather choose to think that it was the considered opinion of the trial court that the evidence which had been adduced before the court and jury in a regular trial was sufficient to raise an issue of fact on the question of conspiracy.

The Court does not reach the question of evaluation of evidence, but holds that the pleadings fail to allege an unlawful conspiracy and that the acts charged against the individual members of the Board were

neither unlawful in themselves nor did such alleged acts bring about the accomplishment of a lawful objective by unlawful means. The allegations in Respondents' pleadings show a studied design on the part of the members of the Board (except Rogers) to pass a rule (the rule under attack), which exceeded statutory authority and would ultimately destroy the business of their competitors. Furthermore, it was alleged that these Board members were also members of the Texas Optometric Association, an organization with a philosophy diametrically opposed to the business methods successfully and lawfully used by the Respondents in the operation of their profession as optometrists. It was alleged that by virtue of the conspiracy, the Board members had, in effect, abdicated their official positions and were acting for their own personal gain and that of their fellow conspirators, the Texas Optometric Association. It was alleged that the Board members (except Rogers) paved the way for such accomplishment by the adoption of another rule known as the "Rule Making Procedure Rule."[1] The petition alleges that the "Rule Making Procedure Rule" was implicitly followed in the adoption of the "Professional Responsibility Rule," and that both rules were unlawfully promulgated for the "sole purpose of hindering and destroying the competition which said Board members, in their individual capacities, and members of the Texas Optometric Association, Inc., may encounter in their personal and day to day activities in their practice of optometry."

The pleadings further alleged that the effect of the rule, which they claim was adopted to destroy competition, would "be tantamount to the destruction of the practice of your Plaintiffs; nevertheless, the said individual Board members, purporting to act in their official capacity, but motivated solely by their own selfish interests and the selfish interests and desires of the Texas Optometric Association, Inc., proceeded with the adoption thereof."

The trial court defined, in its charge to the jury, civil conspiracy in these words:

"You are further instructed that a civil conspiracy is a combination of two or more private persons, firms or associations by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."

This is a correct definition and one that has been approved by the courts. See Bartelt v. Lehmann, Tex.Civ.App. (1947), 207 S.W.2d 131, 132, wr. ref.

Pursuant to Article I, Section 26, of the Constitution of Texas, our Legislature

1. "RULE MAKING PROCEDURE In making rules and regulations for the regulation of the practice of optometry pursuant to Article 4556, Revised Civil Statutes of Texas, the Board shall prepare and propose such rules and regulations and submit by mail a copy of each such rule and regulation, as well as all other such rules and regulations as may have been proposed and filed with the board, supported by a petition signed by at least twenty-five per cent (25%) of the optometrists licensed by and practicing in the State of Texas, in ballot form to each optometrist licensed by and practicing in the State of Texas for a vote thereon. At the end of thirty (30) days from the time such ballots are mailed, the board shall count the ballots that have been returned, provided that no election shall be valid unless a minimum of fifty-one per cent (51%) of the optometrists licensed by and practicing in the State of Texas shall have voted at the election at which such rule or rules are voted on; and each and all of such rules and regulations that have received two-thirds of the votes cast shall be by said board declared as approved (page 67) by the profession. The fact that any rule or regulation is approved by the profession itself shall be considered by the board as prima facie evidence that such rule or regulation is reasonable and necessary for the regulation of the practice of optometry in Texas. No rule or regulation for the regulation of the practice of optometry shall be made by said board that has not received two-thirds of the votes cast in the manner above provided."

adopted Article 7429, Vernon's Annotated Civil Statutes, which reads:

"Any and all trusts, monopolies and conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

It is not in accord with the Constitution of Texas and the laws of Texas to condone the selfish acts of one group of a certain profession which would lead to the destruction of the practice and the elimination of the competition of another group engaged in the same profession.

The Court says that in Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957), this Court recognized that " * * * broad regulatory powers, many of which are somewhat discretionary in nature, are delegated to the * * * Board * * *."

The Court, however, overlooks the statement in Kee v. Baber, which distinguishes that case from this. In Kee v. Baber, we said:

"The gravamen of appellants' attack upon the three rules in question are that they are *inconsistent* with the provisions of Article 4563. We do not so regard them. The provisions of the legislative enactment are broad and general in scope. An intention to vest the Optometry Board with authority to fill in the details relating to the proscribed action by members of the profession is indicated. * * *"

Although the Court in the present case points out that Respondent Carp intervened in Kee v. Baber and attacked the rules there under consideration "on the basis of similar allegations of conspiracy," and that the issue of conspiracy was "put aside by stipulations of the parties," the Court now cites Kee v. Baber as authority for its holding that no conspiracy has been pleaded.

The Court dismisses the conspiracy charge in this case by observing that this is just a professional dispute and that a rule has been adopted which happens to please the members of the Board (except Rogers) and the members of the Texas Optometric Association, Inc., a corporation, its members allegedly having been unlawfully given the authority to finally, in effect, enact the rules for the Board to follow. The conspiracy charges are more serious than the Court seems to realize.

The trial court held the pleadings alleged a conspiracy in restraint of trade, and the trial court was of the opinion that there was *some* evidence showing that a conspiracy produced the rule in order to stifle competition in the sale of eyeglasses. Whether it was urged that there was no evidence of conspiracy or whether the trial court was doubtful as to the sufficiency of the evidence to raise a fact issue is immaterial. The fact remains that the trial court, in the exercise of its discretion, overruled all objections offered by Relators and submitted issues inquiring if the *individual* members entered into a conspiracy with the Texas Optometric Association to use the powers of the Board to prohibit the practice of optometry under trade or assumed names; inquiring if the enforcement of the rule would "result in the stifling of competition in the practice of optometry between those same persons and your plaintiffs (Respondents)." The jury was asked to find if such conspiracy (fraud) was for the purpose of stifling competition.

In none of the cases cited by the Court which involved Railroad Commission orders were there pleadings that the individual members of the Railroad Commission had entered into a conspiracy with one group to stifle competition between that group and another group engaged in the same business. The Relators have failed to show a clear abuse of discretion by the trial court. They have failed to show a clear right to the writ of mandamus. Therefore, the application for the extraordinary writ of mandamus should be denied.

Clearly the objections to the pleadings, and the Relators' motion for instructed verdict presented questions which required the

exercise of discretion by the trial judge. Mandamus will not lie to compel the performance of an act of a judge involving judicial discretion. State Board of Insurance v. Betts, 158 Tex. 83, 308 S.W. 2d 846, 847 (1958); Iley v. Hughes, 158 Tex. 362, 311 S.W.2d 648, 85 A.L.R.2d 1 (1958). In Iley it was held that this court will not issue writs of mandamus to control or revise the exercise of discretion by trial courts in the performance of purely judicial as distinguished from ministerial acts.

In the Betts case, supra, it was said that this Court is not vested with general supervisory power over the district courts.

"If an exercise of discretion by the district judge be involved this Court may not assert its original jurisdiction to enforce its own judgment, even though the actions of the district judge may have been improvident or otherwise erroneous."

The writ of mandamus will not lie to correct a merely erroneous or voidable order of the trial judge. The action of the trial judge in permitting the case to go to the jury, and later declaring a mistrial when a verdict was not obtained are not orders which the trial court was powerless to enter. If such actions were erroneous, such errors can be corrected on appeal. See Iley v. Hughes, supra.

I agree with the Respondents that the conspiracy question should be met. It is stated in their brief:

"* * * [T]he Relators relegate the contention of Respondents to a challenge of 'motives' of the individual Board members. This exercise in semantics cannot sweep under the rug the hard fact that Respondents charged a conspiracy under the Constitution and statutes, offered proof in support thereof, and the belief of the trial judge that there was an issue of fact to submit to the jury. Conspiracy, to become an issue of law, must be determined from an evaluation of the facts offered in support thereof. Weighing the facts to determine the necessary quantum of evidence which would warrant submission to a jury is, and must always be, an exercise of judicial discretion."

The Court, in effect, has held that the pleadings must be sufficient to shock the judicial conscience, and that its conscience could only be shocked upon a "showing of conditions comparable in seriousness to that to corruption, fraud, dishonesty or bribery * * *." I cannot conceive of alleged conditions more corrupt in nature than the allegations that the members of the Board have lost sight of their duties as public officials, and have designedly conceived a scheme to destroy not only the good name of the Respondents but their business as well. The Court says this is not the type of action and conduct which would shock its conscience. Not only that, the Court holds that the "case has been fully developed in the trial court and is ripe for judgment." The effect of this order is to deprive the Respondents of the right to amend their pleadings and obtain a ruling on the amended pleadings by the trial court. The conspiracy issue has been eliminated. The Respondents can expect no relief by appealing from the force of the judgment the trial court has been ordered to enter. I presume it would not shock the conscience of the Court in the event the trial court should grant the Respondents a new trial in order to give the parties a fair opportunity to perfect a record from the trial court's ruling on sufficiency of pleadings after having been given an opportunity to amend their pleadings.

Relators' prayer for a writ of mandamus should be denied.