INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V. RAILROAD
COMMISSION OF TEXAS.

No. 1467.   Decided November 20, 1905.

**1.—Railroad Commission—Correction of Abuses—Constitutional Law—Caption
of Act.**

The title of the Act establishing the Railroad Commission (Act of April
3, 1891), not embracing the subject of the correction of abuses, so much of
section 3 of that act (Rev. Stat., art. 4562), as conferred that power, if con-
strued as giving the right to the commission to correct any abuse which has
been defined by law would be unconstitutional because dealing with a subject
not embraced in the caption of the Act (Railroad Commission v. Houston & T.
C. Ry. Co., 90 Texas, 340, limited).   (Pp. 334, 335.)

**2.—Same—Abuses Affecting Tariffs—Railroad Connections.**

The power to correct abuses granted to the Railroad Commission (Rev. Stat.,
art. 4562), admitting of the broad construction covering abuses generally and
of a more limited one applicable only to abuses in matters affecting freight and
passenger tariffs, a subject of which the regulation is embraced in the caption
of the Act, the latter construction, by which the grant of power in question
would be rendered constitutional, is to be preferred; the Act so construed is
constitutional, but not broad enough to authorize the commission to compel the
construction of connections at points where railroads intersect.   (Pp. 335, 336.)

**3.—Intersecting Railroads—Connections—Railroad Commission.**

The power granted to the Railroad Commission by the Act of May 1, 1903,
amending article 4494, Revised Statutes, to correct abuses by railroads in the
matter of furnishing accommodations for transportation at their junctions with
other roads, construed in connection with the steady legislative policy of re-
quiring the construction by railroads of connections at their points of inter-
section (Pasch. Dig., art. 4900; Constitution, art. 10, sec. 1; Rev. Stat., art.
4440), is sufficient to authorize the commission to enforce the construction of
such connections.   (Pp. 336, 337.)

**4.—Same—Crossings Not at Grade.**

The duty of railroads to construct connections at points of junction is the
same in cases of overhead crossings as in those of intersections at grade, and
may be enforced by the Railroad Commission.   (P. 337.)

Error to the Court of Civil Appeals for the Third District, in an
appeal from Travis County.

The railroad company sued the railroad commission to enjoin the
enforcement of its order requiring the construction of connections with
the Missouri, K. & T. Ry. at their intersection with the line of that
road, at Italy, Texas.   Judgment went for defendant.   Plaintiff ap-
pealed and on affirmance obtained writ of error.

*N. A. Stedman,* for plaintiff in error.—That portion of article 4562
of the Revised Statutes of 1895 conferring authority on the commis-
sion to correct abuses, does not empower the commission to require
railroad companies to construct connecting tracks between their rail-
roads.   Railroad Commission of Texas v. Houston & T. C. Ry. Co., 90
Texas, 340; Elliott on Railroads, vol. 2, sec. 683; Board Railroad Com-
missioners v. Oregon Ry. Co., 17 Oregon, 65; City of Cleburne v. Gulf,
C. & S. F. Ry. Co., 66 Texas, 457.

Article 4494 of Revised Civil Statutes of 1895, as amended in 1903,

does not require railroad companies to construct connecting tracks, nor does it empower the railroad commission to require railroad companies to construct connecting tracks between their railroads.    Authorities under last preceding proposition; also Rev. Stat. of 1879, art. 4226; Acts of 1891, p. 29; People v. New York, &c., Ry. Co., 104 New York, 58; Gulf & I. Ry. Co. v. Texas & N. O. Ry. Co., 56 S. W. Rep., 328; Missouri, K. & T. Ry. Co. v. Thomas, 87 Texas, 282; San Antonio St. Ry. Co. v. State, 90 Texas, 520; Northern Pac. Ry. v. Washington, 142 U. S., 492.

. Articles 4535 and 4536 of the Revised Civil Statutes of 1895 do not require railroad companies to construct connecting tracks, nor do they empower the commission to require railroad companies to construct connecting tracks between their railroads.    Same authorities.

Subdivision 2 of article 4574, Revised Civil Statutes of 1895, does not require railroad companies to construct connecting tracks, nor does it empower the commission to require railroad companies to construct connecting tracks between their railroads.    Same authorities.

No statute of Texas requires railroad companies to construct connecting tracks, nor does any statute of Texas empower the commission to require railroad companies to construct connecting tracks between their railroads.    Same authorities.

The court erred in rendering judgment for the defendant, because so much of article 4562, Revised Civil Statutes of 1895, as attempts to confer authority upon the commission, as an independent power, to correct abuses is unconstitutional, since that portion of article 4562, being a continuation and reproduction of a part of section 3 of the Act of April 3, 1891, creating the commission, which purports to bestow authority to correct abuses, is not contained in the title of said Act of April 3, 1891.    Sec. 36, art. 3, constitution of Texas; Sutherland on Statutory Construction, sec. 90.

The court erred in rendering judgment for the defendant, because granting the power of the commission to require railroad companies to construct track connections, the exercise of the power under the facts and circumstances of this case is unjust and unreasonable.

*R. V. Davidson,* Attorney-General, *T. S. Reese* and *J. P. Lightfoot,* assistants, and *Gregory & Batts,* for. plaintiff in error.—The railroad commission has authority to require railroad companies whose lines cross at grade, or otherwise, to construct connecting tracks.    Const., art. 10, secs. 1, 2; Rev. Stat., arts. 4440, 4441, 4535, 4536, 4494, 4574, sec. 2, 4562; Act of March 27, 1903, Laws, 28th Leg., p. 93; Mattoon v. Republican Valley Ry. Co., 22 A. & E. R. R. cases, 506; Railroad Commission v. Houston & T. C. Ry. Co., 90 Texas, 340; New York, L. & W. Ry. Co. v. Erie Ry. Co., 31 App. Div., N. Y., 378; Philadelphia & Erie Ry. Co. v. Catawissa Ry. Co., 53 Pa., 59.

The action of the railroad commission in requiring the International & Great Northern Ry. Co. and the Missouri, Kansas & Texas Ry. Co. to construct connecting tracks at Italy was a reasonable exercise of the power of the commission to require the construction of connecting tracks.

GAINES, CHIEF JUSTICE.—The following preliminary statement of this case, found in the opinion of the Court of Civil Appeals, is sufficiently full for the purposes of this opinion:

"In March, 1902, the railroad commission of Texas granted an application made by the International & Great Northern Railroad Company for permission to make an overhead crossing of the track of the Missouri, Kansas & Texas Railway Company of Texas, at Italy, in Ellis County, Texas. A nongrade crossing was made, as authorized, leaving a space of about twenty feet between the rails of the two tracks at the crossing.

"On September 24, 1904, after due notice and hearing, the railroad commission, after finding that there was no track connection between the two roads at the town of Italy, whereby cars could be shifted or moved from one road to the other, and that a necessity existed for the construction and maintenance of such connecting track, made an order requiring the two railroad companies to construct and maintain such connecting track. Thereafter the International & Great Northern Railroad Company instituted this suit, alleging that the railroad commission was without jurisdiction or authority to make the last order referred to, and seeking an injunction to restrain its enforcement.

"There was a nonjury trial resulting in a judgment for the railroad commission, and the railroad company has appealed."

The judgment of the trial court was affirmed by the Court of Civil Appeals.

When we granted the writ of error we were inclined to think that so much of the Act of April 3, 1891, which established the Railroad Commission of Texas, as sought to give that body power "to correct abuses" was void for the reason that that subject was not expressed in the title as required by our constitution. The provision referred to is a part of section 3 of the original Act which is incorporated in the Revised Statutes as article 4562, and reads as follows: "The power and authority is hereby vested in the Railroad Commission of Texas, and it is hereby made its duty to adopt all necessary rates, charges, and regulations to govern and regulate railroad freight and passenger tariffs, the power to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and to enforce the same by having the penalties inflicted in by this Act prescribed through proper courts having jurisdiction." If this provision was intended to confer upon the commission the independent power to correct any abuse "which has been defined by law," then as we think, we should be constrained to hold the enactment, so far as it attempted to confer that power, invalid because it was not expressed in the title of the original Act. The title of the Act is: "An Act to establish a railroad commission for the State of Texas, whereby discrimination and extortion in railroad charges may be prevented and reasonable freight and passenger tariffs may be established; to prescribe and authorize the making of rules and regulations to govern the commission and the railroads, and afford railroad companies and other parties adequate remedies; to prescribe penalties for the violation of this Act, and to provide means and rules for its enforcement." The

matter of correcting abuses is nowhere mentioned. It is true that in the case of Railroad Commission v. Houston & Texas Central Railway Company (90 Texas, 340), after having held that the same language in section 2 of article 10 of the constitution conferred a power upon the legislature to correct abuses other than those relating to freight and passenger tariffs, we said: "Having used the same language as that used in the constitution and in the same connection, we conclude that the legislature intended expressly to delegate the power to the commission that the constitution authorized to be delegated to a legislative agency, and the language of the constitution not being confined to correcting abuses in the rates of freight and passenger tariffs, we hold that the power here conferred by the legislature upon the commission empowers it to correct abuses other than those which may be connected. with the rates of freight and passenger tariffs." But we think we were in error in announcing that doctrine. So broad a proposition was not necessary to determine the question certified to this court in that case. The rules of the commission, there under consideration, regulated the compressing of cotton and provided for the tariffs to be charged for its transportation, and as we think, the power there exercised falls within that provision of section 3 of the Act, which makes it the duty of the commission "to adopt all necessary rates . . . to govern and regulate railroad freight and passenger tariffs." The question of the constitutionality of the part of the act then under consideration was not certified to us in that case, nor was it alluded to in the argument. Hence it was not considered. The question of the validity of the Act as is now being considered is presented in this case and we deem it proper to determine it.

The language quoted from section 3 of the Act admits of two constructions: that the commission were empowered to correct all abuses; the other that it was made their duty to correct only such abuses as affected freight and passenger tariffs. We have not without difficulty reached the conclusion, that since the correction of abuses is not mentioned in the title of the act, if the provision admitted only of the broad construction that it applied to every abuse we should hold that insofar it was void. But it is a familiar rule of the construction of statutes, that if an Act be capable of two constructions—one of which is not consistent with the constitution, and the other of which is not in conflict with that instrument, the latter must prevail. The title of the railroad commission Act shows that its purpose was to prevent "discrimination and extortion in railroad charges" and to establish "reasonable freight and passenger tariffs;" and to empower the railroad commission to make rules and regulations to accomplish that purpose. This is sufficient as we think to authorize them to correct abuses in relation to railroad charges, without specific mention of that matter. Under this restricted construction, the provision is constitutional, and therefore we think that the true intent and meaning of the legislature. The fact that the correction of abuses is not mentioned in the title of the statute tends strongly to show that the legislature intended to give authority to correct such abuses only as related to the matters mentioned therein.

Therefore we conclude that the section 3 of the Act, properly construed, is constitutional, but that it is not broad enough to embrace the correction of the abuse which the commission sought to correct in this instance.

It follows, that in our opinion, if the failure of the railroad companies to make a connection at the crossing in question be an abuse, the Act which established the railroad commission did not give that body the power to correct it. If they have that power it must be sought elsewhere.

As early as the year 1853 our legislature enacted a statute which contained a provision that every railroad company should "draw over their road the passengers, merchandise and cars of any other railroad corporation which may enter and connect with their railroad." (Pas. Dig., art. 4900.) In pursuance of the same legislative policy, section 1 of article 10 of the present constitution provided: "Every railroad company shall have the right with its road to intersect, connect with, or cross any railroad, and shall receive and transport each other's passengers, tonnage and cars, loaded or empty, without delay or discrimination, under such regulations as shall be prescribed by law."

So article 4440 of the Revised Statutes gives every railroad company the right to cross and unite with any other railroad previously constructed; and article 4441 makes it the duty of the road "previously constructed" to unite its tracks with the new railway. It may be that these provisions should be construed as mandatory as to both the old and new roads. It would seem that if it is mandatory as to one, it is necessarily mandatory as to the other. These and other provisions of our statutes show the steady policy of our lawmakers to require the connections whenever two lines of railroad intersect or join and to force interchange of business between the connecting carriers. But even if it should be held that they require roads whose lines intersect to put in facilities for the interchange of cars, it follows from what we have said, that the commission act does not empower the commission to correct the abuse, when they have failed to do so.

But on May 1, 1903, an Act was approved which amended article 4494, and which is as follows: "Every such corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto, offer or be offered for transportation at the place of starting and at junctions of other roads and at sidings and stopping places established for receiving and discharging way passengers and freights, and shall take, transport and discharge such passengers and property at, from and to such places, on the due payment of the tolls, freight or fare legally authorized therefor. Failure on the part of railroad companies to comply with the requirements of this article shall be deemed an abuse of their rights and privileges and subject to regulation and correction by the railroad commission." The amendment consists of the insertion of the last provision—namely, that which makes it the duty of the railroad commission to correct the abuse—in case of a failure to comply with the law.

Stripped of so much of its verbiage as does not affect the matter in hand the provision reads: "Every such corporation . . . shall furnish sufficient accommodations for the transportation of all such . . . property as shall be offered for transportation at the place of starting and at junctions of other roads." A junction may be an initial point of shipment—that is a "place of starting"—but if the purpose of the Act was merely to require the accommodations reasonably required at ordinary stations, why mention junctions? The reason why junctions are also named, is, as we think, that it was contemplated that in order to properly discharge their duty to the public two railroads whose tracks crossed each other should have facilities for the interchange of business from the track of the one to that of the other. If so, and if the companies fail to make such connection, it is declared an abuse and it is made the duty of the railroad commission to correct it.

But it is insisted in argument, that there was no junction at the point of intersection of the two railroads in question for the reason that the crossing was not at grade. We think it does not require a physical contact of the rails of the respective roads to make a junction. In United States v. Oregon, etc., Railroad Company (164 U. S., 540), the court say: "Junction in the ordinary acceptation as applied to railroads is the point where two or more lines of railway meet." Here the line of one railway intersects that of the other and we think it makes no difference that their rails do not come in physical contact. It is clear, that the interest of the public is the same whether the crossing is at grade or below grade. It is true that to make a connection, where the crossing is not at grade may involve more expense to the railroad companies, but it is not likely the legislature were swayed in their action by that consideration.

We think the Court of Civil Appeals reached a correct conclusion. In reaching that conclusion they were probably misled by our opinion in the case of Railroad Commission v. Railway Company, supra.

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*