Ellis CARP et al., Appellants,

v.

**TEXAS STATE BOARD OF EXAMINERS IN OPTOMETRY et al., Appellees.**

No. 16669.

Court of Civil Appeals of Texas.

Dallas.

March 25, 1966.

Rehearing Denied April 15, 1966.

See also, Tex., 388 S.W.2d 409.

Price Daniel, Austin, Douglas E. Bergman, Dallas, and Quentin Keith, Beaumont, for appellants.

Mark Martin, Dallas, Charles Babb, Waggoner Carr, Atty. Gen., Hawthorne Phillips and John Reeves, Asst. Attys. Gen., Tom Gee and Will Garwood, Sp. Asst. Attys. Gen., Austin, for appellees.

DIXON, Chief Justice.

This suit was filed by appellants Dr. Ellis Carp, Dr. S. J. Rogers and Dr. N. Jay Rogers against Texas State Board of Examiners in Optometry, hereinafter called the Board, and also against all but one of the members of the Board individually. Appellants pray for a judgment declaring invalid a rule adopted December 21, 1959 by the Board known as the Professional Responsibility Rule, referred to hereinafter as the Rule. Appellants also pray that the Board be permanently enjoined from enforcing the Rule. Permission for appellants to bring this action against the State of Texas was granted in Senate Concurrent Resolution No. 8, dated January 15, 1962.

Dr. N. Jay Rogers, one of the appellants, though a member of the Board, voted against the adoption of the Rule and joined other plaintiffs in bringing this suit.

The effect of the Rule is to prohibit the use of an assumed name in the practice of optometry, and to impose strict limitations on the operation of multiple offices and the splitting of fees. A summary of its provisions will be found in a footnote hereto.[1]

1. In substance the Rule provides as follows:

Sec. 1. *No optometrist shall*:

(a) Divide, share or split fees with any lay person, firm or corporation. However, it shall not be construed a violation of the Rule if an optometrist (1) pays an employee in the regular course of employment, or (2) leases space on a percentage or gross receipts basis; and (3) he may sell or assign accounts receivable.

(b) Divide, share or split fees with another optometrist or physician except (1) on a division of services and (2) then only with the knowledge of the patient, but (3) the Rule will not be interpreted to prevent partnerships.

(c) Practice under or use an assumed name in connection with his practice. However (1) partners may practice under their full or last names, and (2) optometrists employed by other optometrists may practice under their own names in an

The Rule itself is set out verbatim in a footnote to the opinion of our Supreme Court in Texas State Board of Examiners in Optometry et al. v. Carp et al., 388 S.W. 2d 409, 411 (1965).

The Doctors Rogers testified that they maintain 82 offices at numerous locations in the State of Texas. Since 1939 they have operated under the trade name, "Texas State Optical". Dr. N. Jay Rogers testified that the average cost of setting up an office is between $10,000 and $12,000. In addition they usually are obligated to pay rent of $400 or $500 per month under a lease term of normally ten years. Over a period of 24 years preceding the trial they have spent more than a million dollars to publicize their assumed name.

Dr. Carp testified that he operates 71 offices in the State of Texas. He uses several assumed names, among them being "Lee Optical", "Luck One Price Optical", "Mack Optical" and "Mesa Optical". He employs 84 optometrists. He testified that he had spent three or four or five million dollars advertising the assumed name, "Lee Optical".

This suit was the subject of a mandamus proceeding before our Supreme Court, Texas State Board of Examiners in Optometry v. Carp, supra. The suit had gone to trial in the district court under the *preponderance of the evidence rule*. A jury was unable to agree to answers to several special issues, so a mistrial was declared. The Supreme Court in granting a writ of mandamus held that the case should have been tried under the *substantial evidence rule*. Since the facts had been fully developed and only issues of law remained to be resolved, the trial court was directed to enter an appropriate final, appealable judgment under the substantial evidence rule.

In its opinion the Supreme Court stated that there were two decisive questions of law in this case: (1) whether in adopting the Rule the Board acted within the powers delegated to it by the Legislature; and (2) if so, whether the Board's action was arbitrary, capricious or unreasonable because not supported by substantial evidence.

Following the pronouncement by the Supreme Court the district court proceeded to render judgment. The court held that the adoption of the Rule was within the lawful powers of the Board, was reasonably supported by substantial evidence, and has been in full force and effect since its adoption. It was ordered that appellants take nothing by their suit.

█ In their first two points on appeal appellants contend that (1) the Board in adopting the Rule exceeded the power delegated to it by the Legislature and (2) that the Rule is inconsistent with the statute under which the Board operates. We agree with appellants and accordingly declare the

office listed in the names of their employers.

(d) Use or allow his name or professional identity to be used on the door, window, wall or sign of any office or location where optometry is practiced unless said optometrist is actually present and practicing therein during office hours.

(e) Practice in any office or location where any name or professional identification on any sign shall indicate that such office or location is owned, operated or supervised by any person not actually present and practicing therein during office hours.

(f) Requirements (d) and (e) above shall be deemed satisfied if the optometrist is (1) physically present more than half the total hours the office is open for at least nine months of the year; or (2) physically present in such office at least one-half the time such person conducts, directs or supervises any practice of optometry; or (3) regularly makes personal examinations of eyes at such location or regularly directs or supervises such examinations.

Sec. 2. The willful or repeated failure of an optometrist to comply with any of the provisions of Section 1 shall be considered prima facie evidence that such optometrist is guilty of violation of law, and shall be grounds for filing charges to cancel, revoke or suspend his license, or to enjoin him from continuing such violation.

Rule to be invalid and of no force and effect.

The subject of optometry is treated in our Civil Statutes in Articles 4552 to 4566–1, Vernon's Ann.Civ.St. For penal provisions see Articles 735–738a, Vernon's Ann.Penal Code.

In Article 4563 the Legislature has specifically listed the ten grounds upon which the Board in its discretion may refuse to issue a license, or may cancel, revoke or suspend a license.

The powers of the Board are set forth in Art. 4556, V.A.C.S. We quote the material part of the statute:

"The Board shall have the power to make such rules and regulations not inconsistent with this law as may be necessary for the performance of its duties, the regulation of the practice of optometry and the enforcement of this act."

■ The cardinal rule in statutory construction is that courts should ascertain and be guided by the Legislature's intention. We recognize that Art. 4556, V.A.C.S. clothes the Board with "broad regulatory powers, many of which are somewhat discretionary in nature * * *." Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376, 378. We recognize also that the statutes relating to optometry are to be liberally construed to effectuate the purpose intended by the Legislature. Art. 10, Sec. 8, V.A.C.S. Nevertheless, a careful study of available records convinces us that it was not the intention of the Legislature to clothe the Board with the power it has exercised in adopting the Rule. In paragraphs which follow we shall state the reasons which have impelled us to this conclusion.

■ (1) By naming the ten grounds for refusing or canceling a license the Legislature in effect expressed its intention to exclude all others. The maxim, *expressio unius est exclusio alterius* (the naming of one thing excludes another) is applicable here. Though not conclusive the maxim has been pronounced a logical, sensible and sound rule of statutory construction. 53 Tex.Jur.2d 205–206. It has often been applied in determining the powers which have been or have not been delegated by the Legislature to administrative boards, commissions, licensing authorities and others. Commercial Standard Ins. Co. v. Board of Ins. Commissioners, 34 S.W. 2d 343 (Tex.Civ.App.); Foshee Refining Co. v. State, 73 S.W.2d 1098, 1100 (Tex. Civ.App.); State v. Mapel, 61 S.W.2d 149, 152 (Tex.Civ.App.); State v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W.2d 238; Ex Parte Halsted, 147 Tex.Cr.R. 453, 182 S.W.2d 479, 484; Harris County v. Crooker, 112 Tex. 450, 248 S.W. 652, 655; Huntress v. State, 88 S.W.2d 636, 643 (Tex. Civ.App.); McCamey v. Hollister Oil Co., Tex.Civ.App., 241 S.W. 689 (aff. by 115 Tex. 49, 274 S.W. 562); Clark v. Briscoe Irr. Co., 200 S.W.2d 674, 682. The maxim has also often been applied in other jurisdictions. See Sutherland, "Statutory Construction", Vol. 2, p. 412, and 50 Am.Jur. 238.

■ (2) A principle of statutory construction closely akin to the *expressio unius* maxim is this: an administrative agency may implement and fill in details relating to statutory provisions listing or naming powers or activities granted or proscribed, but the agency may not by its own rules extend or add to the powers or activities listed in the statute. We think the principle is applicable here. In taking upon itself the task of listing in Art. 4563, V.A.C.S. the grounds upon which a license to practice optometry may be denied or canceled the Legislature plainly manifested its intention to retain such prerogative unto itself and not to delegate it to the Board; and the Board lacks authority to add to the grounds named in the statute. Kelly v. Industrial Accident Board, Tex.Civ.App., 358 S.W.2d 874, 876; Teacher Retirement System of Texas v. Duckworth, 153 Tex.Civ. 141, 260 S.W.2d 632 (opinion of Court of Civ.App. adopted by 153 Tex. 141, 264 S.W. 2d 98); Board of Ins. Commissioners v.

Texas Employers Ins. Ass'n, Tex.Civ.App., 189 S.W.2d 47; Ketring v. Sturges, 372 S.W.2d 104 (Mo.); Golding v. Schubach Optical Co., Inc., 93 Utah 32, 70 P.2d 871.

(3) We believe the legislative intention was plainly manifested in 1953 when the Legislature rejected a proposed statutory amendment which would have prohibited the practice of optometry under an assumed name. The Beaumont Court of Civil Appeals on October 23, 1952 rendered a decision upholding the right of appellants Rogers to practice under an assumed name. Southwestern Bell Telephone Co. v. Texas State Optical, 253 S.W.2d 877 (1952), no wr. hist. In reaching its decision the court pointed out that neither under common law nor under our statutes was such practice prohibited; and that it was for the Legislature, not the courts, to change the law. The record before us shows that following this judicial decision House Bill No. 5 was introduced in the House of Representatives in 1953. The Bill as drawn prohibited the practice of optometry under an assumed name, and limited the number of offices of each practitioner to two. The Bill was rejected by the House. Thus the Legislature expressed its intention *not* to prohibit the practice of optometry under an assumed name and not to prohibit the operation of multiple offices. The rejection was all the more significant because it came with knowledge that the Beaumont court had held that in the absence of a statute forbidding it, the practice under an assumed name was not illegal.

In Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482, 485, the Commission of Appeals in an opinion adopted by the Supreme Court had this to say:

"When we come to examine the legislative history of section 11 of article 911a, supra, we find that there is no escape from the conclusion that it was the legislative intent that such statute should not be construed so as to allow the insurance company to be joined in the same suit with the bus operator. When such statute, section 11, supra, which was contained in H.B. No. 50, Regular Session 40th Legislature, 1927, was pending in the Senate, an amendment thereto was offered to apply to such section. This amendment provided in express terms that the bus owner and his insurer could be sued in the same action. This amendment was duly adopted by the Senate, and was contained in the act as it originally passed that body. Senate Journal, 40th Legislature, Regular Session 1927, p. 673. Such provision was not in the act as it originally passed the House. After the act, of which section 11 is a part, was passed by the Senate with amendments, the bill was returned to the House as amended, and the House refused to concur in the Senate amendments. House Journal, Regular Session, 40th Legislature, 1927, p. 1175. The bill went to a free conference committee. The report of this committee, which was adopted by decisive majorities in both Houses, eliminated the above-mentioned Senate amendment. We think this history of the act evidences a legislative intent not to permit insurance companies under section 11, supra, to be joined in damage suits in the same action with the bus owners. Love v. Wilcox, 119 Tex. 256, 28 S.W.2d 515, 524 [70 A.L.R. 1484].

"It is evident that section 11 of article 911a, supra, does not expressly authorize the joinder of the insurer in damage suits against the insured. If such right is held to exist, it must be put into the statute by implication. No court should read into a statute by implication that which both Houses of the Legislature have expressly rejected by decisive votes. On this question we will here quote from Judge Greenwood's opinion in Love v. Wilcox, supra: 'No court could justify putting into a statute by implication what both Houses of the Legislature had expressly rejected by decisive votes. The House and Senate Journals leave no

room for doubt of the legislative intent to deny the power exercised by the State Committee in seeking to debar names from the primary ballots under the resolutions of February 1, 1930. Once the legislative intent is ascertained, the duty of the court is plain. To refuse to enforce statutes in accordance with the true intent of the Legislature is an inexcusable breach of judicial duty, because an unwarranted interference with the exercise of lawful, legislative authority.' " [2]

Appellees frequently cite and quote from the opinion in Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957). In that case our Supreme Court passed on the validity of three rules adopted by the Board: (1) the "Bait Advertising Rule", (2) the "Basic Competence Rule" and (3) the "Corporate Practice Rule". It was held that these rules were valid; that the Board in adopting them did not exceed the powers delegated to it by the Legislature; that the rules were not contrary to or inconsistent with the Legislative Act; but were simply a proper attempt by the Board to *implement* the statutory provisions, especially Section

(b) of Article 4563 pertaining to fraud, deceit or misrepresentation in the practice of optometry.

After a careful study of the Kee case and the three rules of the Board there under scrutiny we have concluded that the holdings there are not applicable here. The Supreme Court said that the three rules were adopted by the Board to implement and "to fill in the details relating to proscribed actions" of the statutory provisions. Since they implement but do not undertake to add to the list of statutory prohibitions listed in Art. 4563, V.A.C.S. they are not invalid. As previously stated in this opinion we think the Rule now before us for consideration does attempt to add to the prohibitions in Article 4563, though the Legislature has declined to add the very prohibitions which are set out in the Rule.

Appellants' first two points on appeal are sustained.

In their third and fourth points appellants contend that the Rule is arbitrary and capricious and has no support in substantial evidence. There is no merit in these

2. After this appeal had been submitted and orally argued appellants with our permission filed a supplemental brief to which was attached an exhibit containing certified copies showing the legislative history leading up to the passage in 1939 of the optometry statutes, including Art. 4563 which lists the grounds for refusing or canceling a license to practice optometry. These statutes, according to these certified copies, had their genesis in House Bill No. 410, which as originally introduced prohibited the use of assumed names. The House Committee to whom House Bill No. 410 had been referred changed the Bill so that it specifically authorized the trade name practice. When the Bill came to the floor the House refused to pass the Bill as originally introduced, or as recommended by the Committee. Both the provision prohibiting the assumed name practice and the provision authorizing it were stricken from the Bill before it was finally passed by the House and Senate and signed by the Governor in its present form.

Appellees object to our consideration of the exhibit attached to appellants' sup-

plemental brief because said exhibit and copies were not introduced in evidence at the trial of the case. Appellees contend that we cannot take judicial notice of them. It has been held that courts will not take judicial notice of a statute that has never been enacted. Dungan v. State, 156 Tex.Cr.R. 466, 243 S.W.2d 704 (1951). In the case now before us we are construing a statute which has been enacted though not in the exact form in which it was introduced as a Bill.

The rule in nearly all jurisdictions seems to be that the courts will take judicial notice of the legislative history of enacted statutes as shown in the Legislature's journals and other official records prior to passage of the statute. 31 C.J.S. Evidence § 43, p. 997; Sutherland, "Statutory Construction", Vol. 2, p. 285.

However, we need not decide the question of judicial notice in regard to the contents of the challenged exhibit, for we have reached our conclusions and our decision in this case independently of said exhibit and without considering it.

points. If the Legislature had delegated authority to the Board to adopt the Rule we would be compelled to say that the Board's action is supported by substantial evidence. The statement of facts includes nearly 3,000 pages of testimony of many witnesses plus numerous exhibits. We declare the Rule invalid only because the Board in adopting it acted beyond the powers delegated by the Legislature. Appellants' third and fourth points are overruled.

The substance of appellants' points five, six, seven and eight is that the Rule violates both the Federal and State Constitutions because it impairs the obligation of contracts, takes or destroys appellants' property without due process, bears no reasonable relationship to the health and well-being of the citizens of Texas, is retroactive in its legal effect and permits the Board to delegate unlawfully its rule-making powers to outsiders (members of the profession of optometry).

█ If the Rule is unconstitutional it is only because (as we have held) in adopting it the Board exceeded the powers which the Legislature delegated to it. It is not unconstitutional for the reasons urged by appellants. It has long been settled that legislative bodies and administrative agencies with proper delegation of authority may regulate professions and businesses under the police power. Texas State Board of Examiners in Optometry v. Carp, Tex., 388 S.W.2d 409; Kee v. Baber, 157 Tex. 387, 303 S.W.2d 376; Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 130 A.L.R. 1053; Texas Nat'l Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627; Sherman v. State Board of Dental Examiners, Tex.Civ. App., 116 S.W.2d 843; Turner v. Bennett, Tex.Civ.App., 108 S.W.2d 967; International & G. N. R. Co. v. Railroad Commission of Texas, 99 Tex. 332, 89 S.W. 961; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694; Lewis v. Michigan State Board of Dentistry, 277 Mich. 334, 269 N.W. 194; Williamson v. Lee

Optical of Okla., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563; Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. Points five, six, seven and eight are overruled.

Appellants ask for but the trial court denied an injunction. Though we have declared the Rule invalid we see no occasion for the issuance of an injunction. The question of injunctive relief will arise only if and when the Board undertakes to enforce the Rule.

Because we believe that the Board exceeded its delegated powers in adopting the Rule we reverse the trial court's judgment and here render judgment declaring the Rule invalid and of no force and effect. The court's refusal to grant an injunction is affirmed.

Reversed and rendered in part and affirmed in part.