

# The Attorney General of Texas

April 15, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio. TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002

Opinion No. MW-324

Re: Notice requirements for changing boundary lines of election precinct under article 2.04 of the Election Code

Dear Mr. Driscoll:

On August 25, 1980, the Harris County Commissioners Court approved changes in the boundaries of certain county election precincts. Written notices identifying the precincts to be considered by their numbers and the date, hour, and place of the meeting were mailed to the parties designated in article 2.04, subdivision 6(b), of the Election Code. At a subsequent meeting held on September 22, 1980, the court "ratified and confirmed" its August 25 order as to several precincts, as there was doubt as to whether the notices regarding these precincts had been timely given. The questions asked by your predecessor are essentially as follows:

1. Must the commissioners court give written notices of a meeting at which changes in the boundaries of county election precincts will be considered? If so, may the notice merely state that a boundary change will be considered, or must it also include the nature of the proposed change and/or an accurate description of the boundaries of the proposed precinct?

2. Were the notices advising recipients of the August 25 meeting timely given if deposited in the mail on August 18?

3. If the notices were timely given as to some precincts but not others, are the changes in the boundaries of the former valid and those in the latter void?

4. Assuming that notices as to some precincts were not timely given, did the court's subsequent ratification and confirmation of its August 25 order validate those boundary changes?

5. If some or all of the boundary changes are void, may the court hold another meeting before the beginning of the upcoming voting year in order to change the boundaries of those precincts?

Subdivision 6 was added to article 2.04 of the Election Code in 1979. Acts 1979, 66th Leg., ch. 545, §1, at 1138. It provides in pertinent part as follows:

(b) If a change in the boundary of one or more county election precincts will be considered at a meeting of the Commissioners Court, not later than seven days before the meeting, the Commissioners Court shall give written notice to each county chairman of a political party and to the affected precinct chairman and presiding precinct election judges of the proposed change, identifying the precincts to be considered and the date, place, and hour of the meeting.

. . . .

(f) Failure to deliver notice as required by this subdivision nullifies the boundary change as to which notice was required.

In a brief submitted to this office, it is argued that by including the phrase "of the proposed change" in subdivision 6(b), the legislature indicated its intent that, besides identifying the precincts to be considered and the date, hour, and place of the meeting, notices must also provide specifics regarding the nature of any proposed boundary change. However, we think this argument interprets subdivision 6(b) far too literally. It is well-settled that the primary objective of statutory construction is to ascertain and give effect to the legislature's intent. Jessen Associates, Inc. v. Bullock, 531 S.W. 2d 598 (Tex. 1957). A statute will not be construed so literally as to ascribe to the legislature an intention to do something impractical or unreasonable if it is reasonably susceptible of a construction which would avoid that result. Anderson v. Penix, 161 S.W. 2d 455 (Tex. 1942); Ringo v. Gulf States Utilities Co., 569 S.W. 2d 31 (Tex. Civ. App. - Beaumont 1978, writ ref'd n.r.e.).

The argument set out above would inevitably lead to unforeseen and unintended consequences. In order for a commissioners court to identify a proposed boundary change in a notice, it would have to have some specific proposal in mind. In many instances this will be the case, and the meeting will be called for the purpose of considering that proposal. However, a meeting may well be called for the purpose of considering whether any boundary changes are even necessary. Thus, the most obvious shortcoming of this argument is that in an instance such as this, in order to hold the meeting, a commissioners court would have to identify some specific boundary change in its notices even though it wished to hold the meeting to determine whether a change was even needed. The legislature could not have intended subdivision 6(b) to be construed as requiring such a meaningless gesture.

For these reasons, we conclude that the notices required by subdivision 6(b) need only contain the information specifically mentioned therein, i.e., they must identify

the precincts which might be involved in a boundary change and the date, place, and hour of the meeting at which a change will be considered.

You next ask whether notices advising the recipients of the August 25 meeting were timely given if deposited in the mail on August 18.  Subdivision 6(d) of article 2.04 provides that:

> Notice required by this subdivison may be delivered by regular first-class mail or by any other method.  Notice delivered by mail is considered delivered when deposited in the mail.

It is our understanding that the notices in question were delivered by mail; therefore, if they were mailed on August 18, they must be deemed to have been delivered on that date.  The only question is whether this satisfies the requirements of subdivision 6(b), which states that written notice must be given to the designated parties "not later than seven days before the meeting."

In answering this question, we may look to the Code Construction Act, article 5429b-2, V.T.C.S., for guidance.  Section 1.02(2) of the act states that the act applies to:

> each amendment, repeal, revision, and reenactment of a code, or provision thereof, which amendment, repeal, revision, or reenactment is enacted by the 60th or a subsequent Legislature.

As we have noted, subdivision 6 was added to article 2.04 of the Election Code by the 66th Legislature in 1979; therefore, the Code Construction Act is applicable in this instance.  See Fonseca v. Hidalgo County Water Improvement District No. 2, 496 F. 2d 109 (5th Cir. 1974).  Compare Thiel v. Harris County Democratic Executive Committee, 534 S.W. 2d 891 (Tex. 1976) (article 5429b-2 inapplicable where question of timeliness of filing not dependent upon "computing a period of days").

Section 2.04 of the Code Construction Act provides that:

> (a) In computing a period of days, the first day is excluded and the last day is included.

Subdivision 6(b) of article 2.04 of the Election Code states that the required notice must be given "not later than" seven days before the meeting, which in this instance was held on August 25.  This language is somewhat inartful, but we believe it is clear that a notice given seven days before a meeting satisfies the requirements of that section.  Pursuant to section 2.04 of the Code Construction Act, the date on which the notices were mailed is excluded from the computation of time, but the day of the meeting is included.  Accordingly, the notices mailed on August 18 were delivered seven days before the August 25 meeting in compliance with subdivision 6.

It is suggested in the brief to which we previously referred that section 2.04 of the Code Construction Act conflicts with subdivision 6 of article 2.04 of the Election

Code, because the latter seems to indicate that the day of the meeting should not be included in the computation of time and that the day of delivery should be included. See §§6(b), 6(d). However, we need not address that question, because in this instance the same result is achieved either way.

The answer to your third question is provided by subdivision 6(f) of article 2.04, which states that the failure to deliver notice as required by subdivision 6 "nullifies the boundary change as to which notice was required." Changes in the boundaries of precincts which were first identified in notices for the August 25 meeting which were mailed after August 18 are void. And it also follows that the answer to your fourth question is that the action of the commissioners court in "ratifying and confirming" those changes at its meeting on September 22 could not validate the changes. As noted below, the commissioners court had no authority to consider changes in the boundaries of election precincts at its September meeting.

Your last question is whether, assuming some boundary changes are void, the commissioners court may hold another meeting before the beginning of the upcoming voting year in order to change certain precinct boundaries.

Subdivision 1 of article 2.04 provides that:

> Each county shall be divided into. . . election precincts. . . which. . . shall be differently numbered and described by. . . boundaries or survey lines. . . . At any July or August term, the Court may make such changes in the election precincts as they deem proper, by such order entered upon the minutes of the Court. (Emphasis added).

It is true that our courts have held that:

> . . . directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory.

Federal Crude Oil Co. v. Yount-Lee Oil Co., 52 S.W. 2d 56, 61 (Tex. 1932). However, the question of whether a provision is mandatory or directory ultimately depends upon the legislature's intent. Chisholm v. Bewley Mills, 287 S.W. 2d 943 (Tex. 1956); Burton v. Ferrill, 531 S.W. 2d 197 (Tex. Civ. App. - Eastland 1975, writ dism'd). In our opinion, the subdivision 1 is mandatory in the sense that if the commissioners court wishes to make changes in precinct boundaries, it may do so only during the July or August term of the court. This direction is "the essence of the thing to be done." Had the legislature not intended this to be so, it would not have specifically singled out these two months. It is well settled that the express mention or enumeration of a particular thing in a statute is tantamount to an express exclusion of all others. Ex parte McIver, 586 S.W. 2d 851 (Tex. Crim. App. 1979); Petersen v. Calvert, 473 S.W. 2d 314 (Tex. Civ. App. - Austin 1971, writ ref'd); Carp v. Texas State Board of Examiners of Optometry,

401 S.W. 2d 639 (Tex. Civ. App. - Dallas 1966), aff'd, 412 S.W. 2d 307 (Tex. 1967). See Wilson v. Weller, 214 S.W. 2d 473 (Tex. Civ. App. - San Antonio 1948, no writ) (designation of August term in former article 2933, V.T.C.S., as time when commissioners court may make changes in election precincts cannot be disregarded). See also Attorney General Opinion O-6674 (1945). Cf. Plocek v. Welhausen, 144 S.W. 2d 631 (Tex. Civ. App. - San Antonio 1940, no writ).

Accordingly, we conclude that changes in the boundaries of county election precincts may be made only during the July or August terms of the commissioners court.

## SUMMARY

Article 2.04, subdivision 6(b) of the Election Code does not require that notices identify specific proposed boundary changes. Notices mailed on August 18 of an August 25 meeting were timely given. Failure to deliver notice as required by subsection 6(b) nullifies any boundary change as to which such notice was required, and the void changes could not be validated at the September term of the commissioners court. Subdivision 1 of article 2.04 specifies that boundary changes may only be effected during the July or August terms of the commmissioners court.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Walter Davis
Rick Gilpin
Bruce Youngblood