

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 12, 1984

Mr. Kenneth Ashworth
Commissioner
Coordinating Board
Texas College and University
   System
P. O. Box 12788
Austin, Texas    78711

Opinion No. JM-241

Re:  Whether certain foreign
nationals are residents of
Texas for purposes of tuition
at a state university

Dear Commissioner Ashworth:

You ask whether <u>Toll v. Moreno</u>, 458 U.S. 1 (1982), authorizes certain foreign nationals to establish Texas residency for purposes of payment of tuition at a state university in spite of the limitations of section 54.057 of the Texas Education Code. One of your examples involves a German national, holding a NATO visa, who resides in Texas as a member of the German Armed Forces in accordance with the Agreement between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces, June 19, 1951, 4 U.S.T. 1792 [hereinafter cited as NATO Status of Forces Agreement]. The other example involves a dependent of a Belgium national with an E-1 visa who works for a commercial firm in this country. We conclude that, in spite of section 54.057, both of the foreign nationals in question have the same privilege as a United States citizen to present evidence and establish Texas residency for purposes of tuition.

Section 54.057 of the Texas Education Code provides, in pertinent part, that

> [a]n alien who is living in this country under
> a visa permitting permanent residence or who has
> filed with the proper federal immigration authori-
> ties a declaration of intention to become a
> citizen has the same privilege of qualifying for
> resident status for fee purposes under this Act as
> has a citizen of the United States. . . .

The federal Immigration and Nationality Act recognizes both immigrant aliens and nonimmigrant aliens. 8 U.S.C. §1101 <u>et seq.</u> (1982). Section 54.057 of the Education Code expressly allows two groups of immigrant aliens to qualify for resident status, namely, those under a visa permitting permanent residence and those who file a declaration of intention to become a United States citizen. It is well settled that the express mention or enumeration of a particular

thing in a statute implies an express exclusion of all others.  Carp v. Texas State Board of Examiners in Optometry, 401 S.W.2d 639, 642 (Tex. Civ. App. - Dallas 1966), aff'd 412 S.W.2d 307 (Tex. 1967); Attorney General Opinion MW-324 (1981).  By implication, all classes of nonimmigrant aliens would be precluded under the Texas statute from establishing Texas residency.

In Toll v. Moreno, the United States Supreme Court considered the constitutionality of the policy of the University of Maryland under which only United States citizens and immigrant aliens lawfully admitted for permanent residence in the United States were eligible to establish in-state status for tuition purposes.  The supreme court pointed out in that case that it had "long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders," reiterating the broad principle that

> state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the county is impermissible if it imposes additional burdens not contemplated by Congress.

See De Canas v. Bica, 424 U.S. 351, 358, n.6 (1976); Graham v. Richardson, 403 U.S. 365 (1971); Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419 (1948).  The supreme court found that the University of Maryland's in-state policy is invalid under the Supremacy Clause of the United States Constitution insofar as the policy categorically made domiciled nonimmigrant aliens with G-4 visas ineligible for such status despite a showing of residence in the state.  G-4 visas are issued to nonimmigrant aliens who are officers or employees of certain international organizations and to members of their immediate families.  8 U.S.C. §1101(a)(15)(G)(iv).

The issue before us is the effect of the supreme court decision in Toll v. Moreno on the Texas statutory law.  The Immigration and Nationality Act establishes various categories of nonimmigrant aliens. Congress, expressly conditioned admission of aliens in some non-immigrant categories on an intent not to abandon a foreign residence, a fact which precludes the establishment of a domicile in the United States for those aliens while allowing the establishment of a domicile for certain other nonimmigrant categories.  Section 1101(a)(15) of the Immigration and Nationality Act provides, in part, that

> (15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens --
>
> . . . .
>
> (B) an alien . . . having a residence in a foreign country which he has no intention of

abandoning and who is visiting the United States temporarily for business or temporarily for pleasure;

. . . .

(F)(i) an alien *having a residence in a foreign country which he has no intention of abandoning*, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States. . . .

. . . .

(H) an alien *having a residence in a foreign country which he has no intention of abandoning* (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability, and. . . .

. . . .

(J) an alien *having a residence in a foreign country which he has no intention of abandoning* who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the United States as a participant in a program designated by the Director of the United States Information Agency. . . .

. . . .

(M)(i) an alien *having a residence in a foreign country which he has no intention of abandoning* who seeks to enter the United States temporarily and solely for the purpose of pursuing a full course of study at an established vocational or other recognized nonacademic institution. . . . (Emphasis added).

Congress, however, has allowed other nonimmigrant aliens to enter the country on terms permitting the establishment of domicile in the United States. In addition to section 1101(a)(15)(G)(iv) which was considered by the court in Toll v. Moreno, section 1101(a)(15)(E)(i) contains no residence requirement which precludes the establishment of a domicile in the United States. Instead, those subdivisions provide that

> (E) an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national, and the spouse and children of any such alien if accompanying or following to join him; (i) solely to carry on substantial trade, principally between the United States and the foreign state of which he is a national. . . . and

> (G)(i) a designated principal resident representative of a foreign government recognized de jure by the United States, which foreign government is a member of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669) [22 U.S.C. 288 et. seq.], accredited resident members of the staff of such representatives, and members of his or their immediate family;

> . . . .

> (iv) officers, or employees of such international organizations, and the members of their immediate families. . . .

Thus, the dependent of a Belgium national with an E-1 visa is in a nonimmigrant category for which Congress did not specify a restriction on the residence of the alien. See 22 C.F.R. §41.12 (1984). We conclude that application of the limitations in section 54.057 of the Education Code to such an alien would impose additional burdens not contemplated by Congress in violation of the Supremacy Clause and would constitute an unconstitutional burden imposed by the state.

Pursuant to 22 C.F.R., section 41.12 (1984), the NATO-2 classification of the German national residing in Texas is based on his position as a member of the German Armed Forces in accordance with the NATO Status of Forces Agreement, supra art. III, at 1796 and the Agreement on the Status of the North Atlantic Treaty Organization, National Representatives and International Staff, Sept. 20, 29 and

Dec. 12, 1951, art. 13, 5 U.S.T. 1094 [hereinafter cited as NATO Status Agreement]. The Status Of Their Forces. The NATO Status of Forces Agreement contains no express restriction on a member alien's residence. We conclude, therefore, that the application of the limitations in section 54.057 to this German national would be an imposition of additional burdens on an alien not contemplated by Congress and a violation of the Supremacy Clause.

In our opinion, the criteria established by Toll v. Moreno to determine the constitutional application of the limitations in section 54.057 requires a state university to ascertain a nonimmigrant alien's classification under the Immigration and Nationality Act, under a relevant international agreement such as the NATO Status Agreement, and under the federal regulations, and then to decide whether Congress has prescribed residency requirements for that alien. If Congress has not restricted the residence of an alien to the country of his citizenship, even a nonimmigrant alien must be allowed the same privilege of qualifying for resident status in Texas for tuition purposes that is accorded to citizens of the United States and to aliens who hold permanent residence visas or file their intention to become a citizen. In spite of the limitations in section 54.057, such an alien's status as a Texas resident for tuition purposes will then be determined in accordance with rules and regulations of the Coordinating Board, Texas College and University System, as provided by section 54.053 of the Education Code.

## S U M M A R Y

Under the Supremacy Clause of the United States Constitution, aliens who are permitted by Congress to adopt the United States as their domicile while they are in this country must be allowed the same privilege as citizens and permanent residents of the United States to qualify for Texas residency for purposes of tuition at state universities, despite the limitation in section 54.057 of the Texas Education Code.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton